# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| PACIFIC CONSTRUCTION SERVICES, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 19-cv-4036 |
| STONE CITY IRONWORKS, INC., an Indiana corporation, and BRIAN L. SLINKARD, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pacific Construction Services, Inc. ("PCS") filed a two-count complaint against Stone City Ironworks, Inc. ("SCI") and SCI's president Brian L. Slinkard (together, "defendants") alleging breach of contract and fraud. Defendants asserted affirmative defenses in their answer to the complaint and SCI filed a counterclaim. PCS moves to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike the affirmative defenses under Rule 12(f). For the reasons outlined below, the motion is granted.

## Background

For the purposes of this motion, the Court accepts as true the following facts from the complaint. In 2018, PCS was the general contractor for a federal government construction project at the Fermilab Facility in Batavia, Illinois ("the project"). In April 2018, PCS and SCI entered into a subcontract for SCI to provide structural steel work for the project. In May 2018, SCI retained Metropolitan Steel, Inc. ("Metropolitan") as its steel erector subcontractor for the project and advised PCS that Metropolitan's total contract amount was $476,500.00. On October 18, 2018, Slinkard submitted a request for payment to PCS, representing that SCI would pay Metropolitan $232,719.00, after retention, for work Metropolitan had completed on the project. That same day,

PCS issued a check to SCI in the amount of $466,013.23, which SCI deposited on October 26. PCS next requested an updated partial waiver of lien evidencing that SCI had made the represented payment to Metropolitan, but SCI refused to produce the waiver because, despite its representations, it failed to pay the requested amount to Metropolitan. On December 13, PCS demanded that SCI pay Metropolitan pursuant to the payment request, but SCI did not turn the funds over to Metropolitan. SCI then failed to complete its work under the subcontract.

In January 2019, PCS put SCI on notice of its default and demanded that the default be cured. PCS eventually terminated the subcontract with SCI after it failed to complete its work or pay Metropolitan. PCS has since paid Metropolitan directly for its work on the project. This lawsuit followed, in which PCS asserts a breach-of-contract claim against SCI (Count I) and a fraud claim against both defendants (Count II). Defendants answered the complaint and asserted the following affirmative defenses: (1) "Plaintiff never expressed any problems with the erection services of Metropolitan Steel, Inc."; (2) "Plaintiff was told in or about December 20, 2019 that Metropolitan would complete all erection services for the balance of the contracted for amount."; (3) "As of December 20, 2019 the balance of the Metropolitan [sic] was approximately $60,000.00."; and (4) "Plaintiff should be estopped and barred from claiming erection services to complete the project in excess of the Metropolitan balance." (Dkt. 14 at 10.)

SCI also asserted a counterclaim for damages, alleging that at the precontract meeting, PCS acknowledged its understanding that the contract was to have no retainage on materials and was to include offsite storage of steel materials prior to erection, that the contract was assumed in good faith to contain the terms agreed to by the parties, and that PCS demanded additional goods and services outside the scope of the agreement and "ultimately agreed such additional services need not be provided without proper compensation and they were not provided." (Dkt. 14 at 11-12.)

## Legal Standard

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the sufficiency of a pleading, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). In considering a motion to dismiss, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the nonmovant. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, the pleading must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Affirmative defenses are pleadings and therefore subject to all of the pleading requirements of the Federal Rules of Civil Procedure. *Heller Fin. Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989). Affirmative defenses must contain sufficient factual allegations that state a defense that is plausible on its face under *Iqbal* and *Twombly*. The Court may strike affirmative defenses that are conclusory, vague, and unsupported because they do not meet the requirements imposed by Rule 8(a). *See Heller*, 883 F.2d at 1294. Motions to strike affirmative defenses are disfavored generally but will be granted where they remove unnecessary clutter from the case or where the affirmative defense is insufficient on the face of the pleadings. *Id.* However, the striking of an affirmative defense does not necessarily preclude the party from asserting or arguing its substantive merits later in the case. *Palomares v. Second Fed. Sav. & Loan Ass'n of Chi.,* 2011 WL 2111978, *2 (N.D.Ill. May 25, 2011) (citing *Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank & Trust Co.,* 576 F.Supp. 985, 988 (N.D.Ill.1983) (Shadur, J.)).

**Discussion**

*Rule 12(b)(6) motion to dismiss*

PCS moves to dismiss the counterclaim, arguing that it cannot be faulted for SCI's failure to review the subcontract before execution or failure to note the retainage provision, that the subcontract unambiguously provides for retainage, and that because the retainage provision is unambiguous it is enforceable as written. (Dkt. 15 at 3-4.) In its response brief, SCI contends that its counterclaim pleads the right to payment for the work it completed for PCS per their agreement in the subcontract. SCI also asserts several additional facts regarding the subcontract's language and work it had allegedly completed under the subcontract. (Dkt. 26 at 2-3.)

The subcontract between PCS and SCI is governed by Illinois law. (Dkt. 15-1 at 17 ("This agreement shall be governed by the laws of the State of Illinois.") To state a breach-of-contract claim under Illinois law, a plaintiff must plead facts showing "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012 ). Here, SCI's counterclaim fails to state a claim for breach of the explicit terms of the subcontract, which state that "[m]onthly payments shall be made based on 90% of the percentage of the work performed and completed by [SCI] and approved by [PCS]," and that "[r]etainage shall be reduced pro rata with reductions in [PCS's] retainage as approved by the Owner." (Dkt. 15-1 at 9.) The Court finds that those terms are not ambiguous, and that SCI has not sufficiently pleaded plausible facts that allow a reasonable inference than PCS has breached the subcontract by requiring a reduction for retainage. *See Iqbal*, 556 U.S. at 678. Moreover, though SCI provided supplemental facts supporting its counterclaim in its response to the motion to dismiss, these allegations were not included in the pleaded counterclaim and SCI may not amend its counterclaim by its response brief. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).

As to SCI's assertion that the subcontract was supposed to include terms as to offsite storage of steel materials, under Illinois law, "[o]ne is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement." *Asset Exch. II, LLC v. First Choice Bank*, 953 N.E.2d 446, 456, 352 Ill.Dec. 207, 217 (Ill. App. Dist. 2011) (internal citations and quotations omitted). This is true particularly "where the parties to the agreement are sophisticated business persons." *Id.*; *see also Typenex Co-Inv., LLC v. Solar Wind Energy Tower, Inc.*, 123 F.Supp.3d 1017, 1026 (N.D.Ill. 2015) (Feinerman, J.) (citing *Northern Tr. Co. v. VIII S. Mich. Assocs.,* 276 Ill.App.3d 355, 212 Ill.Dec. 750, 657 N.E.2d 1095, 1103 (1995) ("[A party] is not justified in relying on representations outside of or contrary to the contract he or she signs where the signer is aware of the nature of the contract and had a full opportunity to read the contract . . . ") (internal quotation marks omitted). SCI had a duty to know the subcontract provisions before its execution and has not asserted plausible facts in its counterclaim that would allow the Court to draw a reasonable inference that PCS is liable to it for any misconduct related to execution and performance of the subcontract. Accordingly, SCI's counterclaim is dismissed.

*Rule 12(f) motion to strike*

PCS also moves to strike SCI's affirmative defenses under Rule 12(f) on the grounds that they are indecipherable and unsupported, and also because defendants have not pleaded allegations that establish the elements of estoppel or that PCS should be barred from recovery. (Dkt. 15 at 2-5.) To survive a motion to strike, an affirmative defense must satisfy a three-part test: "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge." *Bernfeld v. U.S. Airways Inc.*, 2015 WL 2448275, at *3 (N.D.Ill. May 21, 2015) (Coleman, J.)

Applying this test to SCI's four affirmative defenses, the Court finds that each of the defenses fails. SCI contends that PCS mischaracterized its affirmative defenses as a claim for equitable estoppel when "in substance" the defenses allege that PCS failed to mitigate damages and that failure to mitigate has been recognized an affirmative defense in this district. (Dkt. 26 at 3.) SCI is correct that failure to mitigate is a recognized affirmative defense, *see Gaffney v. Riverboat Servs. of Ind., Inc.,* 451 F.3d 424, 460 (7th Cir. 2006), but nothing in any of its affirmative defenses puts forth facts that adequately pleads an alleged failure to mitigate or, for that matter, even mentions mitigation. Though SCI states in response to the motion to strike that "[t]he substance of the affirmative defense is that if [PCS] properly mitigated its damages should not have exceeded $60,000.00 and [PCS] therefore should not be allowed to any greater damages," SCI is not allowed to amend its pleadings by its response brief. SCI's affirmative defenses as pleaded cannot stand under the standard set forth in *Iqbal* and *Twombly*. Accordingly, the Court grants PCS's motion to strike the affirmative defenses. *See State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D.Ill. 2001) (Shadur, J.) (it is unacceptable for a party's attorney simply to mouth affirmative defenses in formula-like fashion, e.g. "laches," "estoppel," "statute of limitations," for that does not do the job of apprising opposing counsel and the court of the predicate for the claimed defense--which is after all the goal of notice pleading).

**Conclusion**

Based on the foregoing, the Court grants PCS's Motion to Dismiss Counterclaim and Strike Affirmative Defenses [15]. This matter is set for a status hearing on March 23, 2020 at 9:00 a.m.

**IT IS SO ORDERED.**

Date: 3/9/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge